Good morning, and may it please the Court. My name is Christina Hellman, and I represent the petitioner Daniel Ryel, and I plan to reserve about two minutes of my time for rebuttal today. This morning I'd like to focus on two key issues before this Court, the question of deference and the question of prejudice. There should be no deference given to the State Court's decision in this case because it was the product of a defective process and because it was unreasonable. And I didn't understand that part of your argument, so maybe you can help me with this. I mean, I didn't see and I didn't see you cite any case that said just because the State Appellate Court and the State Habeas Court had a different perspective, therefore, we review de novo. So what's your basis for making that argument? You're correct, Your Honor, I didn't cite any cases. And my basis goes back to more fundamental principles that underlie the balance between federal courts and state courts and also the AEDPA provisions, and those are comedy and federalism. Well, so the Supreme Court says, no, you give deference to the State Court. You look at the last reasoned opinion and then only with very, very narrow exceptions would you have de novo review. And so unless there's a Supreme Court case saying, oh, you're relieved of AEDPA deference in this context, I don't know how we can, again, go against what the Supreme Court has told us. I — those cases where the Supreme Court has said, you give AEDPA deference but for these two narrow statutory exceptions, that is premise — it's my position that it's premised on an understanding that the State court system functions the way it should and that it functions with integrity. And it's not just in this case that the State post-conviction court and the State appellate court sort of saw things differently. The State post-conviction court went against the court of appeals in its own case. But just to bring you back to the statute, you're suggesting that we find another exception in addition to 2254d1 and 2 that relieves us from AEDPA deference, and so to make a new law on that point. Is that correct? Yes. That's point one of my argument. And I also, in point two, though, my argument is that the State court, even if you're going to just follow the statutory exceptions, that the State court was unreasonable in its application of the Strickland and Kimmelman cases from the Supreme Court. Well, the problem I'm having with — I want to go back to your first point. The problem I'm having is, I guess, the same one Judge Akuta is having. It seems to me that if the PCR court was just totally off the reservation and was thumbing its nose at the Oregon court of appeals on direct review, the answer to that question should have been resolved with an appeal again to the Oregon court of appeals by your client after the PCR decision, and that would have — as I understand it, that court denied review. So apparently they weren't concerned about what the PCR court did, so I'm having a hard time determining how AEDPA deference would not apply when there was an opportunity for State appellate courts to step in if they thought there was error and correct it, but apparently they chose not to. And I think that that underscores, again, the unreasonableness of what the State courts did in this situation, which was to have a State — You want to jump to your second prong of your argument, and I want you to hold to the first prong. I want to understand why I am relieved of my obligation to apply AEDPA deference because of the procedural posture in which this case comes to us now. Because the system in the State court didn't function with integrity, which is the state court of appeals that reviewed the appeal from the PCR court didn't find a State liar. They didn't correct any State liar. They weren't offended. So why would the Federal court be worried about it? Well, you know, one argument you can make is that the last reason — we just look at the last reason decision, and there is no last reason, you know, review of the PCR court's, I'll call it, you know, illegal determination, right? That's correct, Your Honor. So if we look at that and compare, you know, the validity of that independently, because there is no other reasoned State court decision after that, isn't that your argument, that's why we should look at that de novo? That's part of the argument, yes, Your Honor. There is no reasoned State court decision that discusses whether or not the State post-conviction court was acting outside of its bounds. That's not a constitutional claim. I mean, we're looking at the State PCR court for its determination that there wasn't a Sixth Amendment violation. Yes, that's right. And Mr. Ryle, I assume, argued in his briefs to the Oregon court of appeals in appealing the denial of PCR relief that the circuit court judge had overstepped his bounds. Got it. Got it, exactly. And was not honoring the ruling of the Oregon court of appeals on direct review. That's correct. And if the State court is unwilling to look at constitutional errors, then it – there is no problem with the Federal court reviewing a claim de novo. Deference exists because most of the time the system works in the State court. The State courts look at constitutional errors. They do – the judges do what they're supposed to do, and that's why. Well, why was – let's get to the second point. Why was the State PCR court unreasonable in determining – in applying Strickland – so it was an objectively unreasonable application of Strickland in saying that this trial counsel was not ineffective? For two reasons. First, the trial counsel cited the wrong rule of evidence to try and have the critical evidence on self-defense introduced. And second, trial counsel made an improper offer of proof under Oregon law. And the Oregon court of appeals recognized that it was those deficiencies that prohibited – that prevented evidence from coming in. And so when Mr. Rial said – what those errors – So the court said, and along with the dissent in the direct appeal, that the trial counsel had gotten it close enough. Even though there were technical errors, so potentially the trial court wasn't wrong, even though there were technical errors, it was close enough that it didn't fall below the level of deficient representation. So why was that unreasonable? Because good enough wasn't enough in this case. This is not a situation in which the trial counsel maybe chose different wording of jury instructions or picked a witness that maybe he shouldn't have called or something in which you can have a judgment and you can have leeway. This is more like the trial attorney thinking he was close enough to a filing deadline, but missing it by a couple days. And so maybe he was somewhat reasonable in the way he calculated the numbers, but they were wrong. And the brief doesn't get filed and the case gets dismissed. That's what happened here, is this is a critical and fundamental thing for lawyers to do, is know the law, especially when this is the most important thing in your whole case, is getting the evidence of self-defense before the jury. Who were these victims? This was so let's get to the prejudice prong. So this was circumstantial evidence of these two other incidents. So it wasn't that you had the three eyewitnesses who said no, they weren't armed, the three, the two victims, I guess. So help me understand what the prejudice was for not getting in evidence of these two other incidents. The prejudice is that it changed for two reasons. First, the other evidence that didn't come in would have supported Mr. Ryle's credibility before the jury. So when he told the jury that he feared for his safety and the safety of his friends, he thought that he was going to be shot or beat to a living pulp, he said. The jury would have heard other evidence that would have corroborated that interaction, his interpretation of that interaction. What about the three eyewitnesses? They were independent eyewitnesses. Well, the three eyewitnesses, there were two points. Again, Your Honor, first of all, they were all pretty far away. At least one of them was looking at the incident in her rearview mirror. And, yes, there was evidence in this record that a jury could potentially rely on to convict Mr. Ryle of murder. But the critical part of it is that under Strickland we ask whether there's a reasonable probability that the outcome would have been different. Knowing more about the victims would have supported Mr. Ryle's story, would have made it more likely the jury would have believed them. And we know this was a careful jury. Mr. Ryle was indicted for murder. The jury rejected murder and convicted him on a lesser included of manslaughter. And so if they had had additional evidence about the victims, about their reputation for violence from police officers, and about a prior extraordinarily similar incident in which mirrored what Mr. Ryle and his friends testified had happened, that would have likely tipped the balance on the murder charge. Do you want to save some time for everybody? Yes. Thank you, Your Honor. We'll hear from the State. May it please the Court. Inga Wells on behalf of Respondent Gary Kilmer. I'd like to start by responding to counsel's argument about the relationship between the decision of the Oregon Court of Appeals on direct review and the State Post-Conviction Court. She suggests in her brief that what the Post-Conviction Court did was essentially reverse a decision of the Court of Appeals. And I think it's important to understand that that's really not what happened in this case. What the Court of Appeals held was that a particular claim of error wasn't preserved for appellate review. That's a completely different inquiry than what the State Post-Conviction Court was deciding, which was whether trial counsel was constitutionally ineffective in how he raised that issue in the trial court. And so, you know, different questions, one a constitutional question and one simply an Oregon procedural rule about reviewability. And it seems to me that the State Post-Conviction Court is not doing that. I see. So your position is that Judge Armstrong's dissent, even though it spends a lot of time talking about the interplay between Oregon rules of evidence and what defense counsel must proffer, was really directed toward whether or not there was a failure to preserve the issue for appellate review on direct review? Well, what the dissent said, which, you know, wasn't the majority holding in that opinion, was simply that the dissent believed that the claim had been preserved and that some of the evidence that had been offered was admissible, and then ultimately that the court didn't believe that that was harmless. But again, that's a legal question about preservation and about the admissibility of evidence, which is sort of a different inquiry than whether what trial counsel did in this case was constitutionally sufficient. I think we're saying the same thing, maybe just in a different way. Essentially, Judge Armstrong, in dissent, would have found that there was no waiver of the preservation of the issue for appeal because the trial lawyer was close enough in terms of citing to Rule 404, and yeah, maybe he lumped together different items of evidence that should have been offered piecemeal to the trial court, but that there was evidence offered that should have been introduced in the defense case, and that the trial court judge was the one who erred, not counsel. That's correct. What trial counsel did was cited to 404 and 405, but didn't break down that 404 inquiry into the various subparts of that rule. And didn't separate the admissible and inadmissible. Didn't separate the admissible and inadmissible, but did distinguish between the couple of incidents which, I guess you could call it, you know, prior bad acts and other evidence that he provided in his offer of proof that was simply opinion testimony about the two victims' reputation for violence. So I'm trying to understand your position. Is it that the ruling of the post-conviction court is not in conflict with the post-conviction court of appeals ruling on direct appeal? Correct. Because they're related to different subjects? Yes. I mean, different issues, not subjects. Different issues? Yes. The court of appeals. But they did, you know, I mean, there is a lot of comment in the opinion, you know, about the errors that the, that were made in the direct appeal opinion, right? You're referring to comments in the direct appeal opinion from the court of appeals about its view? Yes. The majority, yes. Yes. The majority opinion wrote, you know, a lengthy opinion, and in its view, the particular claim of error hadn't been preserved, both by a failure to segregate admissible and inadmissible evidence in an offer of proof, and also by not citing to the particular subsection of 404 under which some of the evidence. Well, without getting into the particulars, in sum, the Oregon court of appeals on direct appeals, I think, found in a number of instances, although not entirely, in a number of instances, and, you know, maybe partly in some of the offers, that defense counsel erred, right? No. I think I would characterize it as it found that a claim of error hadn't been preserved, and I don't think those are necessarily the same things. And I think the best way I can answer that is by an example. No, but they weren't preserved because of trial counsel's error. He raised the wrong things. I mean, that seems to be the bottom line, however you characterize it. So the question is, if the State appellate court says he raised the wrong things, he didn't preserve his claim of error on these points, if that's consistent with the PCR court saying, nevertheless, it was ineffective assistance of counsel. I mean, I guess theoretically, at least, those could be consistent. You could make technical errors that don't rise to the level of being ineffective, but I don't think you can say there's no tension between those two rulings, can you? Kennedy, let me ask you this. Is it in so many words that, you know, that the PCR court said, didn't say in so many words, did it, that the trial counsel did not commit error? The post-conviction court said that trial counsel was not ineffective because he cited to 404, and that was close enough. He came pretty close, you know. It was a pretty good shot or something, you know, that kind of a hit and run. That's a fair characterization, yes. But he did something more. He found that if there was a problem here, it was as much the problem of the ruling of the trial judge, who seemed to get hung up on this idea that if Mr. Ryle didn't know the victims prior to the altercation, that the evidence as to their prior bad acts of aggressive behavior couldn't come in under any circumstances. That seemed to be the trial court's view, yes. I mean, in essence, what he was saying is, I disagree with how my colleague handled the trial. I think that's what the post-conviction court said. And in the case of the trial judge, it was a trial court error that was not preserved, or at least the majority of the appeals concluded that. Kennedy, you don't see that as contrary to State v. Ryle, the direct appeal opinion? No. You don't think it's contrary to that? I don't. I think there are two separate questions. Can you also address the prejudice point? So even if we assume this was deficient performance by the attorney in not getting that evidence admitted for some purposes, your position I take is that there would be no prejudice. So can you explain why you would take that position? Certainly. First of all, I think it's important to understand that of all of the evidence that was submitted as part of the offer of proof, the only evidence that would have been admissible would have been testimony about Christie and Gutsman's propensity for violence. And it's the State's position that in light of the other evidence that was submitted that in light of all of the other evidence, both from the eyewitnesses who weren't part of all of this, the testimony of Mr. Ryle's companions, and the inconsistent testimony of Mr. Detheridge and Mr. Christie, that even if that evidence had come in, it simply would not have made a difference to the outcome of this case. And another piece of that that, frankly, I hadn't thought too much about until I was rereading the transcript yesterday was Mr. Ryle's testimony that he had intended not to shoot Mr. Detheridge, who was the one he believed had a gun, but was meaning to just sort of fire shots at the car and that it was an accident. He didn't mean to hurt anyone. That seems to be what the jury found in convicting him of manslaughter. And so I'm not even sure we can say on this record that the jury didn't believe what he said about, I was afraid, I thought these people were going to hurt me, and that's why he was convicted of the lesser crime. Kennedy. I see you're over your time. I'd like to ask a question.  I'm going to ask you on the threshold issue of, do we look at that de novo because there was no State court ruling on it, or you believe there's a, you know, sufficient State court ruling on prejudice that we should defer under EDPUT to the State court? It's the State's position that the State court did rule on the issue of prejudice. It was just a sentence or two, certainly wasn't a lengthy finding. The magistrate judge in this case, sort of out of an abundance of caution because of that limited record, did essentially review de novo in concluding that there's no prejudice. I don't think it makes a difference either way. Thank you. Thank you very much. Counsel, I'll give you a minute or two on rebuttal. Thank you, Your Honor. I have a few brief points to make. First, not only was this an unreasonable application of Strickland, it was also an unreasonable application of the Kimmelman case in which the Supreme Court did recognize that one error by counsel, if it was serious enough, could be ineffective and could result in prejudice. Second, the post-conviction court's decision was also unreasonable, as the discussion just illuminated, because it grafted on additional considerations beyond which were put forward in Strickland. So in Williams v. Taylor, the Supreme Court looked at the Fourth Circuit and decided that they had grafted on an additional requirement of fundamental fairness or fundamental due process considerations to the Strickland test and found that to be unreasonable. That's what this court did here when it considered, when the post-conviction court considered the fairness to trial counsel to fault him for the performance and when the court was considering its own view of what the trial court and the court of appeals did. But if the State is correct that the claim was defaulted for failure to properly preserve it on appeal, then how could the PCR court be precluded from examining the conduct not only of the lawyer, but also the trial judge and how the ruling was handled? I respectfully, Your Honor, disagree with their characterization of what the court of appeals held in the Riel case. My read of that case says that they specifically said the trial court did not err in excluding the evidence because the wrong rules were cited and the offer of proof was defective. Not that it was not a case of issue preservation on appeal or not. And on the other, the last point I'd like to make is on my first point I started with on deference, which is that when you consider whether there should be deference and as I've characterized it as a defective process, it's also important to keep in mind that the result of the process was in part based on the State's taking contrary positions to both courts of appeal. And that is, when that happens, this Court has previously imposed judicial estoppel against the State, and that is part of why the process here was defective and part of why review of this claim should be de novo. Thank you. Okay. Thank you very much. We'll take a 10-minute recess before our last argument on the calendar. The next case, Taggart v. Astru, is submitted on the brief.
judges: Tashima, Tallman, Ikuta